UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――

WARREN BILLINGSLEY,

        Petitioner,        Case No. 1:07-cv-684

v.        Honorable Paul L. Maloney

CARMEN PALMER,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of three to fifteen years, imposed by the Kent County Circuit Court on July 13, 2004, after Petitioner pleaded guilty to unarmed robbery, MICH. COMP. LAWS § 750.530. In his *pro se* petition, Petitioner raises three grounds for relief, as follows:

    I.    THE TRIAL COURT ABUSED IT'S DISCRETION BY DENYING [PETITIONER'S] REQUEST AND MOTION TO WITHDRAW HIS GUILTY PLEA (BY REFUSING TO LET [PETITIONER] WITHDRAW HIS GUILTY PLEA ON TWO SEPARATE OCCASIONS) OR THE TRIAL COURT ERRONEOUSLY DENIED [PETITIONER'S] MOTIONS TO WITHDRAW HIS GUILTY PLEA BOTH PRIOR TO SENTENCING WHERE HE MADE A CLAIM OF INNOCENCE AND ARGUED THAT HE HAD BEEN PRESSURED AND MIS-INFORMED BY COUNSEL TO PLEAD AND THE TRIAL COURT DETERMINED THAT THE PROSECUTION WOULD NOT HAVE BEEN PREJUDICED BY PERMITTING THE PLEA WITHDRAWAL.

    II.    [PETITIONER'S] GUILTY PLEA WAS INVOLUNTARY DUE TO THE INEFFECTIVE ASSISTANCE OF HIS COUNSEL PRIOR TO THE PLEA.

    III.    [PETITIONER] IS ENTITLED TO A RE-SENTENCING BECAUSE THE TRIAL COURT MISSCORED OFFENSE VARIABLE[] 4 (SERIOUS PSYCHOLOGICAL INJURY).

(Br. in Supp. of Pet. at i, docket #1-2 at 2.)

Respondent has filed an answer to the petition (docket #17) stating that the petition should be denied. Upon review and applying the AEDPA standards, I find that Petitioner's stated grounds are either noncognizable state law claims or have no merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

The state prosecution arose from the July 13, 2003 robbery of Brandi Nicole Neumann, from whom a cell phone was taken. Petitioner was charged with unarmed robbery. A supplemental information was filed charging petitioner as a habitual offender, fourth offense. Petitioner also was charged in a separate case with delivery with intent to distribute marijuana, together with a related resisting and obstructing charge and a supplement for being a habitual offender.

On July 13, 2004, the date set for trial, the prosecutor advised the court that two alternative plea agreements had been offered to Petitioner, which would be withdrawn unless Petitioner agreed to plead guilty at that time. (7/13/04 Plea Tr., 3, docket #20.) The alternatives were described by the prosecutor and defense counsel as follows:

> MR. CROZIER [PROSECUTOR]: . . . I offered Mr. Billingsley an opportunity to plead guilty to one count of unarmed robbery and/or he could receive the low end of the guidelines and then plead guilty to a second case, or he could just plead as charged to unarmed robbery and with no sentence recommendation, and the second case, the delivery of marijuana case would be dismissed.
>
> I don't know what he wants to do at this point in time. This is the only time the offer is being made. It's up to him what he wants to do, obviously, but if he doesn't plead guilty right now, then I'm withdrawing any offers.

> THE COURT: And this covers, of course, 04-03624 and 04-03649?
>
> MR. CROZIER: Yes, it does, your Honor.
>
> MS. EPPLER [DEFENSE COUNSEL]: Let me explain a little bit so it's clear for the record. I've had discussions with Mr. Billingsley about the offer, that he can either plead to the unarmed robbery by itself, they would dismiss the habitual offender status in this case and the drug case in its entirety, with the R & O and everything, and then he takes his chances at sentencing with the judge, obviously within the parameters of the sentencing guidelines.
>
> I've also discussed the alternative offer, which is if he pleads to unarmed robbery and the possession with intent to deliver marijuana, Mr. Crozier would then dismiss everything else, the R & O and the supplements, and I think there's some misdemeanor traffic case, as well. The rest of that would get dismissed, and he is guaranteed, if he pleads to both of those felony charges, he would then be guaranteed that sentencing be at the low end of the guidelines, whatever they come out to be.
>
> I've discussed possible guideline scenarios with Mr. Billingsley. Obviously the final decision is going to be up to – the Department of Corrections is going to score them. The Court is going to make the final decision as to what they score out to be, but I discussed those two possibilities.
>
> I've also discussed the fact that Mr. Crozier is no longer making this offer – that whether his trial goes today or it gets adjourned because the Court is taking another case, those offers would not be on the table or extended. He would be going to trial as charged with the supps on both cases.
>
> So I've discussed that with him and now he – so what would you like to do, Mr. Billingsley?
>
> THE DEFENDANT: Your Honor, I'll plead guilty.
>
> MS. EPPLER: Do you want to plead just to the unarmed or just the low –
>
> THE DEFENDANT: Just to the unarmed.
>
> THE COURT: All right, let me get the – and that would be 04-03624?
>
> MS. EPPLER: Correct, the one that's set for trial today.

(Plea Tr., 3-5.) After Petitioner declared his intent, the court began the plea process. The court inquired as to Petitioner's understanding of the offense, the maximum possible sentence, and the

- 3 -

rights he would be waiving. The court specifically inquired about whether the plea was coerced in any way:

> THE COURT: And do you further understand that if your plea is accepted here today, you'd be giving up any claim that the plea was the result of promises or threats that were not disclosed at this proceeding or that it was not your own choice to enter this plea?
>
> THE DEFENDANT: Yes.

(Plea Tr., 7.) The court also confirmed the plea agreement made by Petitioner:

> THE COURT: Mr. Crozier, so the plea agreement, then on this case is if he pleads as charged to unarmed robbery, the habitual offender is dismissed and all other cases are dismissed in their entirety, and there's no sentence agreement?
>
> MR. CROZIER: One other case is dismissed, it's 04-03649, is dismissed in its entirety. And there's no sentence agreement with respect to the unarmed robbery.
>
> THE COURT: Is that all correct, Ms. Eppler?
>
> MS. EPPLER: That's correct. I believe, also, there might be some traffic, like a seat belt and things like that violation that I think are also going to be dismissed.
>
> MR. CROZIER: If they arose out of the prior case, yes, those offenses.
>
> MS. EPPLER: Yes, they arose out of the marijuana case.
>
> THE COURT: All right. So, Mr. Billingsley, has the complete plea agreement been correctly stated?
>
> MS. EPPLER: Yes.

(Plea Tr., 7-8.) Before asking for Petitioner's plea, the court also confirmed that no other promises had been made:

> THE COURT: Has anybody promised you anything in addition to that?
>
> THE DEFENDANT: No.
>
> THE COURT: What is your plea to unarmed robbery?

- 4 -

>           THE DEFENDANT: Guilty.
>
>           THE COURT: Has anybody threatened you in any way to cause you to plead?
>
>           THE DEFENDANT: No.
>
>           THE COURT: Is it your own choice to plead guilty?
>
>           THE DEFENDANT: Yes.

(Plea Tr., 8-9.) After establishing the factual basis and finding the plea to be understanding, voluntary and accurate, the court again inquired about other promises that may have been made to Petitioner:

>           THE COURT: . . . Either counsel aware of any promises, threats or other inducements other than what's been mentioned on the record?
>
>           MR. CROZIER: No, your Honor.
>
>           MS. EPPLER: I'm aware of none, your Honor.

(Plea Tr., 11.)

On September 1, 2004, the first date set for sentencing, Petitioner sought to withdraw his plea on the grounds that he was factually innocent and had been pressured by his attorney to accept the plea. (9/1/04 Sentence Adjournment (S. Adj.) Tr., 5, docket #21.) Petitioner represented that he wanted to go to trial. He admitted an altercation with another woman, but he denied that he robbed the alleged victim. (S. Adj. Tr., 8.) He also claimed that he had been told by his attorney that he would receive a sentence that did not exceed one year in the county jail. (S. Adj. Tr., 8.) In light of Petitioner's expressed dissatisfaction with his attorney, defense counsel moved to have new counsel assigned, regardless of whether Petitioner was permitted to withdraw his plea. (S. Adj. Tr., 6, 9.) The court denied the motion to withdraw the plea, and it assigned new counsel for the

sentencing on the grounds that there had been a breakdown in the attorney-client relationship. (S. Adj. Tr., 12.)

Petitioner's substitute counsel filed another motion to withdraw the plea, which was heard on April 22, 2005. (4/22/05 Mot. Tr., docket #22.) Counsel argued that Petitioner felt pressured to plead by the discussion between the prosecutor and the attorney that a jury would convict him in short order. Facing a possible maximum sentence of life imprisonment, Petitioner pleaded guilty notwithstanding his innocence. After the plea hearing, when he received a copy of the police report, he realized the victim had initially identified someone else and that the victim was not the woman he thought was his accuser. (4/22/05 Mot. Tr., 4-5.) The court denied the motion to withdraw, noting that, at the time of his plea, Petitioner was under oath, admitted his conduct, and obtained substantial benefit from the plea. (4/22/05 Mot. Tr., 7.)

On May 4, 2005, Petitioner was sentenced at the bottom of the sentencing guidelines range to a prison term of three to fifteen years. (Sentencing Transcript (S. Tr.), 7, docket #23.)

### B. Direct Appeal

Petitioner sought leave to appeal to the Michigan Court of Appeals. His brief, which was filed by counsel on January 11, 2006, raised the same three issues raised in this application for habeas corpus relief. (See Def.-Appellant's Br. on Appeal, docket #24.) By unpublished order issued on February 17, 2006, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. (See 2/17/06 Mich. Ct. App. Order (MCOA Ord.), docket #24.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same three claims raised before and rejected by the Michigan Court of Appeals. By order entered July 31, 2006, the Michigan Supreme Court denied his application for

leave to appeal because it was not persuaded that the questions presented should be reviewed. (See Mich. Ord., docket #25.)

**Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

Petitioner's first two grounds for habeas relief involve his guilty plea. First, he argues, he improperly was denied his right to withdraw his guilty plea, because he was actually innocent of the offense and had been coerced into his plea by defense counsel's misrepresentations. Second, Petitioner contends that his guilty plea was involuntary due to the ineffective assistance of counsel. In his third ground for habeas relief, Petitioner argues that his sentencing guidelines were mis-scored and his sentence violated his right to due process because it was based on facts found by the court and neither admitted by Petitioner nor found by a jury.

I.     Motion to Withdraw Plea

Petitioner's first ground for relief is meritless. A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, the question whether Petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

II.    Involuntary Plea

Petitioner argues that his plea was not voluntary because he was coerced by the ineffective assistance of his attorney in failing to provide Petitioner with a police report before the plea hearing and promising Petitioner that he would receive a jail sentence less than one year. The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Alford*, 400 U.S. at 31 ("Strong evidence of guilt may

suffice to sustain a conviction on an *Alford* plea, and may be essential under FED. R. CRIM. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir.1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir.1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to be voluntary, a plea must not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson v. Morgan*, 426 U.S. 637, 647 (1976) ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he

is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

Petitioner's plea unquestionably constituted an intelligent choice among the alternative courses of action open to him. *Hill*, 474 U.S. at 56. As the trial court noted in denying Petitioner's request to withdraw his guilty plea, Petitioner "received a substantial benefit . . . from th[e] plea agreement." (4/22/05 Mot. Tr., 7.) In exchange for his plea to unarmed robbery, the government dismissed the fourth offender supplement, which could have resulted in a life sentence for Petitioner. It also dismissed all charges and supplements arising out of another case involving possession with intent to distribute marijuana. As a result, the plea agreement, on the record before the trial court, appeared to be an intelligent choice among the options available to Petitioner. *Hill*, 474 U.S. at 56.

Petitioner claims, however, that his plea was not voluntary because his attorney coerced him by telling him that he would receive a jail sentence of less than one year. Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude his present assertion that he was coerced by a sentencing promise. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of a plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only

to the parties." *Id.* at 90; *see also Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992) (rejecting petitioner's claim of attorney promises that conflicted with the petitioner's plea testimony); *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993) (reiterating that a petitioner is bound by his statements made during the plea hearing).

Here, the trial court thoroughly discussed the terms of the plea agreement and repeatedly inquired into the voluntariness of Petitioner's plea. Petitioner repeatedly denied that undisclosed promises or threats had induced him to enter his guilty plea. Only after these repeated inquiries and denials of any coercion did the court accept the plea and find it to be "understanding, voluntary and accurate." (Plea Tr., 11.) As a result, Petitioner's current claim that he was coerced by his attorney contradicts his express denials at the plea hearing that he was coerced by anyone. In addition, Petitioner's claim that his attorney's promise of a jail term of less than a year flies in the face of the description of the plea agreement given by the prosecutor, defense counsel and the court, all of whom advised Petitioner that any plea to the unarmed robbery alone was without a sentencing agreement. (Plea Tr., 3, 4, 7-8.) Petitioner clearly was aware of the content of the plea agreement and is bound by his own statements made during the plea hearing.

Petitioner next asserts that trial counsel rendered ineffective assistance of counsel in presenting the plea agreement to Petitioner because she failed to provide copies of the police report prior to Petitioner's decision to plead guilty. That report apparently showed that the victim first identified someone else from a photograph before picking Petitioner from a different line-up. The man initially identified by the victim was two inches taller than Petitioner and had a different hair style. Petitioner suggests that the victim's erroneous identification of the other man demonstrates that Petitioner was actually innocent of the offense and the case should have been dismissed for lack

of probable cause. As a result, Petitioner contends that his attorney was ineffective in encouraging him to accept the plea bargain.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

In the context of a guilty plea,

> [t]he principal value of counsel to the accused . . . often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it." Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. . . . A prospect of plea bargaining, the expectation of hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether [other defenses] might be factually supported.

*Tollett*, 411 U.S. at 267-68. In addition, an attorney's advice and a defendant's decision to plead guilty inevitably involves a series of difficult judgments:

> All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

*McMann*, 397 U.S. at 769-70.

Here, Petitioner argues that his attorney was ineffective for failing to conclude that, because the witness had made an erroneous identification before identifying Petitioner, effective counsel would have concluded that the case was insufficient to support a conviction and would have recommended that Petitioner reject the plea. The argument is frivolous. The record reveals that defense counsel was aware of the earlier misidentification and of the potential to challenge the subsequent identification of Petitioner on that basis. (*See* S. Adj. Tr., 6-7, docket #21.) However, counsel also was aware that the victim's identification of Petitioner was supported by the fact that the stolen cell phone had been traced to Petitioner through the phone records. (S. Adj. Tr., 6-7.) The witness' earlier misidentification was merely a fact to be weighed against her subsequent identification of Petitioner and other evidence, not grounds for dismissal of the case. Regardless of whether Petitioner now believes that a jury would have found him not guilty, a competent attorney would have recognized that such a verdict was far from assured. *See McMann*, 397 U.S. at 769-70. As a result, the trial court reasonably determined that Petitioner had failed to overcome the

presumption that defense counsel acted outside the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

For all these reasons, the trial court's conclusion that Petitioner's plea was knowing, intelligent and voluntary constituted a patently reasonable application of established Supreme Court precedent.

### III. Sentencing Error

In his third ground for habeas relief, Petitioner contends that he is entitled to resentencing because the court mis-scored Offense Variable (OV) 4, based on a finding of serious psychological injury to the victim. Petitioner argues that he was deprived of his right to due process when the court made sentencing findings respecting OV 4 based on facts that were neither proved to a jury nor admitted by Petitioner during his plea hearing.

Petitioner bases his argument on the United States Supreme Court holding in *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Unlike the State of Washington's determinate sentencing scheme, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with

a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-92 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 237 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). Therefore, under Michigan law, the trial judge sets the minimum sentence (within a certain range), but can never exceed the maximum sentence. *Drohan,* 715 N.W.2d at 789.

Because the trial court can never exceed the maximum sentence set by statute, Michigan's indeterminate sentencing scheme, unlike the determinate sentencing scheme at issue in *Blakely*, does not infringe on the province of the finder of fact, and, thus, does not run afoul of *Blakely*. *See Blakely,* 542 U.S. at 304-05, 308-09. Because the trial court in the present case sentenced Petitioner well within the parameters of Michigan's indeterminate sentencing scheme, it did not violate his Sixth Amendment rights. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *see also Gray v. Bell*, No. 1:06-cv-611, 2007 WL 172519, at *3 (W.D. Mich. Jan. 19, 2007); *Pettiway v. Palmer,* No. 1:06-cv-132, 2006 WL 1430062, at *1 (W.D. Mich. May 23, 2006); *Stanley v. Jones,* No. 1:06-cv-49, 2006 WL 1459832, at *2 (W.D. Mich. May 23, 2006); *Jones v. Trombley*, No. 2:07-cv-10139, 2007 WL 405835, at *3 (E.D. Mich. Jan. 31, 2007); *Mays v. Trombley*, No. 2:06-cv-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006); *Worley v. Palmer,* No. 2:06-cv-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006); *George v. Burt*, No. 2:04-cv-74968, 2006 WL 156396, at *5 (E.D. Mich. Jan. 20, 2006); *Walton v. McKee*, No. 2:04-cv-73695, 2005 WL 1343060, at *3 (E.D. Mich. June 1, 2005).

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Date: October 19, 2009         /s/ Ellen S. Carmody
                               ELLEN S. CARMODY
                               United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).